ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

DANIEL PASTOR (CABN 297948)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    daniel.pastor@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> CHRISTINA NGUYEN, <br><br> Defendant. | NO. 23-CR-183-SI-2 <br><br> **UNITED STATES' SENTENCING MEMORANDUM** <br><br> Judge: Hon. Susan Illston <br> Date: December 13, 2024 <br> Time: 11:00 a.m. |

## I. INTRODUCTION

Defendant Christina Nguyen (age 29) pleaded guilty to count two of the captioned indictment charging her with conspiracy to tamper with a witness or informant. PSR ¶ 2. Nguyen was friends with multiple people who were part of a drug conspiracy that distributed fake Adderall pills containing methamphetamine, cocaine, and marijuana. The conspirators paid couriers—including Nguyen's ex-boyfriend—to transport controlled substances and suitcases of cash between stash houses in the Bay Area and between Los Angeles and the Bay Area. After Nguyen's ex-boyfriend was arrested by the FBI, co-defendant Elliot Leung reached out to Nguyen and had her offer her ex-boyfriend $100,000 per year if he was sentenced to prison and agreed not to cooperate with law enforcement.

Unaware that her ex-boyfriend (hereafter the "cooperating witness" or CW) had already begun cooperating with the FBI, Nguyen and one of the drug conspirators—co-defendant Elliot Leung—engaged in a weeks-long pressure campaign to buy his silence. Their campaign of meetings, encrypted chats, and calls with the CW included payments from the drug group, culminating with a $19,000 cash payment that Nguyen gave to the CW during a recorded meeting in her car.

## II. SENTENCING GUIDELINES CALCULATIONS

As reflected in the plea agreement and the PSR, the parties and U.S. Probation calculate the Sentencing Guidelines for Nguyen's offense as follows:

| | | | |
|---|---|---|---|
| a. | Base Offense Level, U.S.S.G. §§ 2X3.1 / 2J1.2(c) [underlying drug offense (OL 32) – 6 offense levels] | | 26 |
| b. | Acceptance of Responsibility: | | - 3 |
| c. | Zero-Point Offender, U.S.S.G. § 4C1.1 | | -2 |
| d. | Total Offense Level: | | 21 |

PSR ¶¶ 47-56; Dkt. 74 at 4. Nguyen has no prior criminal history points. PSR ¶¶ 58-63. Her total offense level is 21 and she is CHC I with advisory sentencing guidelines of 37-46 months. PSR ¶ 94.

## III. DISCUSSION

The Court must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to rehabilitate the defendant. 18 U.S.C. § 3553(a)(2); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Guidelines are "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

Section 3553(a) sets forth factors that the Court must consider in determining an appropriate sentence: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the purposes of sentencing; (3) the kinds of sentences available; (4) the Guidelines range for sentences; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims. 18 U.S.C. § 3553(a); *Carty*, 520 F.3d at 991. Although the Guidelines are not binding, they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 350 (2007).

**A.     The Offense – Witness Tampering Conspiracy**

**1.     The Drug Conspiracy**

Elliot Leung was part of a drug conspiracy with John Khuu and others that operated in the Bay Area and the Los Angeles region. The drug conspiracy distributed multiple drugs including fake Adderall pills containing methamphetamine. PSR ¶ 19. The conspirators employed at least two drug couriers who moved drugs and money in the Bay Area and between the Bay Area and Los Angeles. *Id.* The drug group also worked with a cryptocurrency exchanger[1] to convert cryptocurrency drug proceeds from its darknet drug sales into cash. PSR ¶¶ 19-20, 22-23.

The FBI arrested one of the drug group's couriers in August 2022. PSR ¶ 12. Agents had observed that courier deliver 1 kilogram of methamphetamine to an informant in December 2021. PSR ¶¶ 7-9. The courier ("cooperating witness" or "CW") agreed to work with the FBI and provided details about his work for Elliot Leung, John Khuu, and other members of the drug conspiracy. PSR ¶¶ 8-12.

When Khuu was arrested in August 2022,[2] agents searched Khuu's cell phone and found chats between Khuu, Leung, and other members of the conspiracy. PSR ¶¶ 20-23. The chats showed that Khuu, Leung, and others were distributing a variety of controlled substances and laundering large amounts of cryptocurrency and cash. PSR ¶ 23. Khuu operated a darknet drug vendor account that sold counterfeit pills and accepted payment in cryptocurrency. PSR ¶ 22. Agents tied Khuu's darknet vendor account to nearly 500 drug sales and about 620 Bitcoin in drug proceeds—then worth about $5.3 million. PSR ¶ 22.

**2.     The Drug Conspirators Sold Counterfeit Pills on the Darknet**

During the conspiracy, the CW moved counterfeit pills for the drug group's leaders. PSR ¶ 24. A text message exchange between Khuu and the CW from April 3, 2022 confirms this as well as the fact that Leung (who other conspirators called "Dank" or "e") was involved with the pills:

---

[1] *See United States v. Hung Duong*, Case No. 5:22-CR-144-EJD (N.D. Cal.), Dkt. 40, 47 (Duong was sentenced to 20 months in custody for laundering drug proceeds)

[2] Khuu was arrested in Southern California and transferred to the Northern District of Texas to face federal money laundering charges related to drug proceeds. PSR ¶ 20. Khuu was also charged with a drug offense in the Northern District of California. PSR ¶ 20; Case No. 22-cr-302-CRB. Agents obtained Khuu's jail calls and found that Khuu was in frequent contact with Elliot Leung. PSR ¶ 21. Leung was not arrested by the FBI until June 22, 2023. PSR ¶ 41.

| | | |
|---|---|---|
| 1 | KHUU | Do you have the **xans** on you as well? |
| 2 | CW | Yee |
| 3 | | Yee<br>I got 10 on me |
| 4 | KHUU | **10 Bs?** |
| 5 | CW | Yeah |
| 6 | KHUU | We are supposed to return all the xans |
| 7 | CW | Oh Okay |
| 8 | | **I can grab it all from dank**<br>Then head there |

*Id.* "Xans" is the street term for counterfeit Xanax (alprazolam) pills that are often manufactured by darknet drug suppliers and that sometimes contain fentanyl. PSR ¶ 25. When Khuu refers to "10Bs", agents understood him to mean "10 boats"—a "boat" refers to the quantity of 1,000 pills. *Id.* The CW's comment, "I can grab it all from dank," is consistent with the CW's information that Leung stored pills for the conspiracy in the Bay Area.

**B.  FBI Searches at the Group's Bay Area Stash Houses on Starview Way and Norfolk Street Uncover Drugs and Firearms and Send the Conspirators into a Panic.**

On August 12, 2022, the FBI executed search warrants at Elliot Leung's residence on Starview Way in the Twin Peaks area and at a drug stash house used by the conspirators on Norfolk Street in the South of Market neighborhood. During the search of Leung's residence on Starview Way, agents seized multiple firearms and ammunition, a bag with seven orange pills, a bag with white powder, multiple large bags of marijuana, and indicia with the name Elliot Leung. PSR ¶ 13. At the Norfolk Street stash house, agents seized roughly 15,000 orange counterfeit Adderall pills, multiple bags of marijuana, two assault rifles, and a large variety of ammunition. PSR ¶ 14. The orange pills were tested at a DEA lab and represent 6,256 grams of a mixture containing methamphetamine. PSR ¶ 42. Between the two locations searched, agents seized also over 760 pounds of processed marijuana. PSR ¶ 15. Agents identified evidence that the two properties served as hubs for the distribution of drugs through nationwide darknet sales in which drugs were sent through the U.S. Mail. PSR ¶¶ 15, 22.

\\

**C.    Christina Nguyen and Elliot Leung Attempt to Buy the Silence of the CW on Behalf of the Drug Conspiracy.**

After the CW was arrested by the FBI in early August 2022, Elliot Leung arranged a meeting between the CW and Nguyen. PSR ¶ 36. Nguyen dated the CW and then broke up with him before the CW was arrested. *Id.* Nguyen frequently socialized with members of the drug conspiracy and was close friends with the girlfriend of one of the conspirators. *Id.* Given her close connections to her ex-boyfriend and other members of the drug conspiracy, Nguyen was aware of the group's illegal activities and the role her ex-boyfriend played as a courier for the drug group. Her close friendship with members of the drug group and their girlfriends drove her decision to become part of the witness tampering conspiracy.

In an initial meeting in her car, Nguyen told the CW that Leung and the other conspirators would pay the CW $100,000 per year if the CW agreed not to cooperate with law enforcement and was sentenced to prison. PSR ¶ 36. On August 25, 2022, Nguyen again met with the CW to follow up on the hush money offer. PSR ¶ 37. During this second meeting, which was secretly recorded by law enforcement, the CW stated: "The deal is 100 for every year." *Id.* Nguyen replied, "Yeah for …" She then stopped speaking to see if the CW was wearing a wire by lifting his shirt. *Id.* This episode dramatically demonstrated that Nguyen knew that what she was doing was wrong and that it could land her in prison. On the video of the meeting in Nguyen's car, Nguyen appears to be reviewing the CW's phone—presumably searching for any indication that he was cooperating with law enforcement. Later in the conversation, Nguyen pressures the CW to fire his court-appointed lawyer and engage a lawyer who the drug conspirators would pay for so that the CW can see the "full picture."

Nguyen continued to work with Leung who had her meet with the CW on multiple occasions with the intent to prevent the CW from revealing Leung and his co-conspirators' drug distribution activities to federal law enforcement. PSR ¶ 38; Dkt. 74 at 2-3.

In encrypted Wickr messages exchanged over multiple weeks, Leung used the screennames "keepfaith," "havefaith," "Havefaith1" to communicate with the CW, who was using the screenname "hidenseek444". PSR ¶ 39. Leung promised that the CW would be paid hush money not to cooperate with federal law enforcement. *Id.* To reassure the CW that Leung and his associates would make good

on the promise, Leung directed the CW to pick up $4,000 from a post office box that the CW and Leung had previously used as part of the drug conspiracy. *Id.* In her plea agreement, Nguyen admits that she was aware that Leung was messaging the CW to discuss the hush money deal. Dkt. 74 at 2-3.

On September 27, 2022, C. Nguyen met the CW on behalf of the drug conspiracy. PSR ¶ 40. Afterwards, Leung had an audio call with the CW in which Leung continued his efforts to persuade the CW not to cooperate with law enforcement. PSR ¶ 40. At Leung's direction, C. Nguyen then delivered $19,000 in cash to the CW during a meeting in her vehicle on October 7, 2022. *Id.*

### D. Other 3553 Factors

The defendant was raised in San Jose and had a normal childhood. PSR ¶¶ 65-67. She graduated from Loyola Marymount University in 2017 (PSR ¶ 83) and worked in several jobs in the Bay Area from 2017 to 2022. PSR ¶¶ 87-89.

Nguyen's claim that she committed the offense because of feelings she had for her ex-boyfriend (PSR ¶ 45) is difficult to square with the transcripts of her conversations with the CW, which show her attempting to manipulate her ex-boyfriend to protect other members of the drug conspiracy. However, Nguyen does not appear to have committed the instant offense for financial gain.

## IV. CONCLUSION

In accordance with the parties' plea agreement, the government respectfully recommends that the Court sentence Nguyen to 12 months and one day in prison, two years of supervised release, and the terms and conditions recommended by U.S. Probation.

DATED: December 6, 2024                                     Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

/s/
DANIEL PASTOR
Assistant United States Attorney

GOV. SENTENCING MEMO                 6
NO. 23-CR-183-SI-2